(148 App. Div. 110.)

### KING v. UNION TRUST CO.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

1. EVIDENCE (§ 419*)—PAROL EVIDENCE—NATURE OF CONSIDERATION—DEEDS.
   To show the real consideration of a deed expressing a nominal consideration, evidence de hors the deed is admissible.
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1912, 1913; Dec. Dig. § 419.*]

2. DEEDS (§ 210*)—EVIDENCE—CONSIDERATION.
   Evidence in an action for damages for breach of a covenant against incumbrances contained in a deed executed to plaintiff by her deceased

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

husband for the expressed consideration of love and affection and $2 *held* sufficient to show that the deed rested upon sufficient consideration to support the covenant.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 635, 636; Dec. Dig. § 210.*]

3. COVENANTS (§ 127*)—COVENANT AGAINST INCUMBRANCES—EVICTION—DAMAGES.

Where a covenantee has been evicted as a result of incumbrances, he may recover only the consideration, with interest or mesne profits, and the costs of the suit, but may not recover the increased value of the property resulting from improvements which he has made upon the land.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 238–242, 258; Dec. Dig. § 127.*]

4. COVENANTS (§ 127*)—BREACH OF COVENANT AGAINST INCUMBRANCES—DAMAGES.

Where a covenantee upon breach of a covenant against incumbrances has extinguished a mortgage, he is entitled to reimbursement therefor by way of damages.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 238–242, 258; Dec. Dig. § 127.*]

5. COVENANTS (§ 96*)—BREACH—COVENANT AGAINST INCUMBRANCES.

A covenant against incumbrances is a contract of indemnity, and, if broken at all, is broken as soon as made.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 111–129; Dec. Dig. § 96.*]

6. COVENANTS (§ 127*)—AGAINST INCUMBRANCES—NOMINAL DAMAGES.

On breach of a covenant against incumbrances, the covenantee can recover only nominal damages before he has suffered actual loss.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 239; Dec. Dig. § 127.*]

Appeal from Trial Term, New York County.

Action by Martha King against the Union Trust Company as executor of William F. King, deceased. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Samuel Untermyer, for appellant.
Perry D. Trafford, for respondent.

SCOTT, J. Appeal from a judgment entered upon a decision of the court without a jury, dismissing the complaint upon the merits. The action is by a widow against the executor of her husband's estate for damages for the breach of a covenant against incumbrances contained in a deed of real estate executed by the husband in his lifetime to his wife.

On December 31, 1902, William F. King executed and delivered to his wife a deed, with full covenants, in the statutory short form, of a house and lot in the city of New York for the expressed consideration of love and affection and $2. The conveyance was made subject to certain covenants in former deeds, but no reference was made to a mortgage for $50,000 then constituting a lien on the prem-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ises, and which had been executed by King when he purchased the property in October, 1901. This mortgage the plaintiff has since paid off, and she now seeks to recover the amount paid for that purpose, as damages for the breach of the covenant against incumbrances contained in the deed to her. The court found as one of the facts in the case "that there was no valuable or pecuniary consideration for the deed of William F. King to the plaintiff of the premises No. 871 Madison avenue, or for the covenant against incumbrances contained therein." He therefore held that no action would lie for breach of the covenant.

The question whether this finding of no substantial consideration is supported by the evidence first merits attention. It appeared from the evidence, and was found by the court, that William F. King, who was a merchant in the city of New York, in the year 1892 purchased a house in Fifty-Sixth street, the deed being made to his wife, the present plaintiff, for an expressed consideration of $70,000, of which $40,000 was secured by a purchase-money mortgage executed by the plaintiff and her husband. Whatever cash consideration was paid was furnished by Mr. King, presumably out of his own funds. On March 31, 1893, plaintiff executed a deed of this house to one William B. Thorn for the expressed consideration of $72,000, subject to the above-mentioned mortgage for $40,000, which the purchaser assumed as part of the consideration. Plaintiff received no part of the consideration for this conveyance; it undoubtedly having been received by her husband and deposited in his bank. On December 20, 1893, De Will C. Hays executed a deed to plaintiff of a house in East Sixty-First street for the expressed consideration of $75,000, and on the same day she executed a purchase-money mortgage to the vendor for $40,000. The evidence tends to show that so much of the consideration as was paid in cash was paid by William F. King out of his bank account. Considerable sums were expended, presumably by Mr. King, in altering and decorating this house, and on January 6, 1897, plaintiff executed a deed therefor to Pauline W. Paget for the expressed consideration of $140,000, subject to a mortgage for $45,000. This deed was recorded on January 12, 1897, and on the following day Mr. King deposited in his bank $90,000, which undoubtedly represented the cash consideration paid for the house. Mr. King apparently had at that time a business reason for using a considerable amount of money, for the next day he drew out of the bank, in checks for large amounts, upwards of $82,000. On October 15, 1901, Mr. King took a deed in his own name from Adelaide E. Bayliss of the house No. 871 Madison avenue for the consideration of $90,000, and the same day executed what is termed a purchase-money mortgage to Robert W. Tailer for the sum of $50,000. It is this house which he conveyed to his wife on December 30, 1902; and it is this Tailer mortgage which she paid off which is the foundation for this action. We think that these facts justify the conclusion that the last-mentioned house was conveyed to plaintiff for a substantial consideration.

[1] There can be no doubt of the propriety of attempting to show by evidence do hors the deed itself what the real consideration was,

for "it is always open to a party where a nominal consideration is expressed to show what the real consideration was." Med. College Laboratory v. N. Y. University, 178 N. Y. 153–165, 70 N. E. 467, 471. We think that it is a fair, and indeed compelling, inference that the first house acquired, that in Fifty-Sixth street, was a gift from King to his wife, assuming, as we do assume, that the cash consideration was furnished by him. It is no uncommon thing for men of comfortable means to buy houses and cause the title to be put in the wife's name, intending thereby to make a gift to the wife. No other reason, except the intention to make a gift, is suggested by the evidence why the deed should have been made to plaintiff, and not to her husband. He was at the time in prosperous circumstances, and a member of a well-known firm of merchants, and there is nothing to induce the belief that he could at that time have desired to place the property beyond the reach of creditors. We therefore feel that we stand on safe and sure ground in starting with the proposition that the Fifty-Sixth street house was a gift to plaintiff. It thus became her separate property, and its proceeds, when it was sold, belonged to her. The fact that her husband took the proceeds and deposited them temporarily in his own bank did not operate to deprive her of the right to the proceeds, and did not amount to a re- gift from plaintiff to her husband. There can be no reasonable doubt that it was King's intention and purpose to apply this money to the purchase of the Sixty-First street house, which was also taken in plaintiff's name and the cash consideration paid for which was substantially equal to the cash received on the sale of the Fifty-Sixth street house. The plaintiff thus became the unqualified owner of the Sixty-First street house, and it is of no consequence, as it seems to me, that that ownership had its origin in a gift from her husband. Upon very plain principles she was entitled, as owner, to any increase or accretion of value whether resulting from the rise in the value of the real estate in the vicinity, or from the improvements and decorations effected by her husband. And so, when that property was sold, the proceeds were the plaintiff's property, and there is nothing to warrant the belief that she consciously and intentionally made a gift back to her husband. The fact that he received the proceeds, doubtless with her consent, and expended them for his own purposes, whether with or without her knowledge does not appear, is certainly not to be accepted as evidence of a gift of the proceeds by his wife. It is too common a circumstance for wives to intrust the care of their money or property to their husbands to justify the acceptance of such an act as evidence of a gift from the wife to the husband. The situation, therefore, after the sale of the Sixty-First street house, was that King held $90,000 which was the property of his wife, being the proceeds of the sale of her property.

It is unnecessary to determine whether or not, under the circumstances, the plaintiff could have maintained an action at law against her husband's estate to recover this money, if he had not invested it in the Madison avenue house and conveyed that house to her. There are many cases in which an obligation which is unenforceable at law,

as when the statute of limitations imposes a bar, or the debtor has been discharged in bankruptcy, will furnish a valuable consideration for an executory promise. It appears in evidence that King referred to the Sixty-First street house in conversation as being the property of the plaintiff, and after the sale expressed on more than one occasion his intention of providing her with another house to take its place; that after they had moved into the Madison avenue house, while the title still stood in his name, he expressed the intention of soon transferring it to plaintiff, and always spoke of it as her house. Upon the whole evidence we cannot doubt that it was King's purpose and intention to replace the Sixty-First street house with the Madison avenue house, and that he conveyed the latter house in satisfaction of his indebtedness to her for the proceeds of the Sixty-First street house. If this be so, there was ample pecuniary consideration to support the covenant against incumbrances. There is ample ground, also, for the belief that King understood that he was under an obligation to clear off the $50,000 mortgage, and that he intended to do so. In the first place, there is the covenant itself which is inappropriate to, and seldom incorporated in, a purely voluntary deed. In the second place King had received $90,000 on the sale of plaintiff's Sixty-First street house, and had invested only $40,000 in cash in the purchase of the Madison avenue house. In the third, shortly after the conveyance to his wife, he wrote to her, evidently referring to the Madison avenue house: "You have in addition to house mortgage which I have to pay." In the fourth place, when differences had arisen between the parties, four or five years after the conveyance, and a separation agreement was entered into, a clause was introduced which clearly referred to a claim on the part of plaintiff that King was under an obligation to pay the mortgage, and reserved to her the right to insist upon that claim without forfeiting the provision made for her under the separation deed.

[2] We are therefore of the opinion that the plaintiff succeeded in showing that the deed to her rested upon sufficient consideration to support the covenant, and that she is entitled to recover damages for its breach. As to the measure of damages in such a case there has been no little confusion.

[3] If the covenantee has suffered an eviction as a result of the existence of the incumbrance, the rule appears to be that he may recover only the consideration, with interest or mesne profits and the costs of suit, and that he may not recover the increased value of the property resulting from improvements which he has made upon the land. Dimmick v. Lockwood, 10 Wend. 142.

[4] But, when the covenantee has extinguished the incumbrance, he is entitled to recover what it cost him to extinguish it. Delavergne v. Norris, 7 Johns. 358, 5 Am. Dec. 281; McCuckin v. Milbank, 152 N. Y. 297, 46 N. E. 490; Utica & Chenango & S. V. R. R. Co. v. Gates, 8 App. Div. 181, 40 N. Y. Supp. 316. That this should be the rule in a case like the present is apparent when the nature of the remedy is considered.

[5, 6] A covenant against incumbrances is treated as a contract of indemnity, and, although broken (if broken at all) as soon as made, the covenantee is confined to nominal damages until he actually suffers loss, but, when he has so suffered, he can receive complete indemnity only by recovering the amount of his loss. Delavergne v. Norris, supra; McCuckin v. Milbank, supra. The plaintiff, therefore, having paid off the incumbrance, is entitled, upon the present record, to judgment for the sum which she was obliged to pay to discharge it.

It follows that the judgment must be reversed and a new trial granted, with costs to appellant to abide the event. All concur.