SODERBERG v. HOLT et al.

No. 5550. Decided May 28, 1935. (46 P. [2d] 428.)

*J. J. Whitaker,* of Salt Lake City, for appellants.
*Riter & Cowan,* of Salt Lake City, for respondent.

WOLFE, Justice.

The time-table in this case is important. On November 18, 1925, the defendants conveyed to the plaintiff certain real property in Salt Lake county, Utah, by a warranty deed, subject only to a mortgage of $2,000. At the time of conveyance there were unpaid taxes for the year 1923 amounting to $82.39, which were a lien upon said property. On the 22d day of May, 1928, plaintiff paid to Salt Lake county the sum of $126.56 in extinguishment of the lien of the aforesaid taxes. On April 29, 1933, plaintiff brought this action against the defendants for the amount paid to extinguish the lien, and judgment was rendered in his favor and against the defendants for said amount, from which judgment defendants appeal.

The case came up on the judgment roll and a stipulation that at the time the warranty deed was given by the defendants to the plaintiff, to wit, November 18, 1925, there existed on the records of the county recorder's office of Salt Lake county a tax sale on the premises recorded March 13, 1923. It thus appears that the taxes were for the year 1922 instead of 1923, as alleged in the

complaint, and as found by the court. A tax sale for 1923 taxes could not be recorded on March 13, 1923. Neither the stipulation nor the judgment roll reveals what the transaction was between the plaintiff and the county wherein the sum of $126.56 was paid. It does not appear whether the property went to tax deed to the county and was sold at the May sale or a private sale at one of the meetings of the commission thereafter, or whether it was redeemed before the county made a sale, all of which three possibilities could have happened under Comp. Laws Utah 1917, § 6056, as amended by Laws Utah 1921, chap. 140, and now known as R. S. Utah 1933, 80-10-68. The stipulation speaks of the extinguishment of the said tax lien on May 22, 1928, and from this we would presume that the property had been redeemed and not purchased at a sale from the county. As a technical matter, the lien of the tax is extinguished by the auditor's tax deed to the county. See *Hanson* v. *Burris* 86 U. 424, 46 P. (2d) 400. As we shall see later in this opinion, the fact that the property had gone to auditor's deed, which was evidently the case if we presume that the county treasurer did his duty, may have some bearing on this case. According to the time-table laid down in the statutes pertaining to the collection of delinquent taxes, the property would be sold to the county for delinquent taxes for 1922 some time between the 21st day of December, 1922, and the 21st day of January, 1923, and on or before the 15th day of March, 1923, would be transmitted to the county recorder and an item entered by the latter official on the abstract books in his office. The period of redemption would expire four years after the sale or some time between the 21st day December, 1926, and the 21st day of January, 1927, after which time the county auditor would make out his deed to the county. If, therefore, the officers did their duty, as we must presume they did, the land upon which the 1922 taxes were charged must have gone to auditor's deed some time in 1927. These facts will be of moment later in this opinion.

The defendants and appellants set up in the lower court sections 6466, 6467, and 6474, Comp. Laws Utah 1917, as a bar to the bringing of the action. It will be noted that more than six years elapsed between the time the plaintiff obtained his deed from the defendants and the time when this action was brought, the deed being obtained on November 18, 1925, and the action being brought on April 29, 1933. But not quite five years elapsed between the time the plaintiff paid out the $126.56 and the time this action was brought. The warranty deed was in the form provided by section 4881, Comp. Laws Utah 1917, now known as section 78-1-11, R. S. Utah 1933. It is provided by said section that by such deed the grantor covenants with the grantee that (1) he is lawfully seized of the property; (2) that he has good right to convey the same; (3) that he guarantees the grantee, his heirs and assigns in the quiet possession thereof; (4) that the premises are free from all encumbrances, and (5) that the grantor, his heirs and personal representatives will forever warrant and defend the title thereof in the grantee, his heirs and assigns against all lawful claims whatsoever. The plaintiff sued upon the fourth covenant implied by the deed, to wit, the covenant against encumbrances. The defendants set up the statute of limitations, especially section 6466, Comp. Laws 1917, contending that if there was a violation of the covenant against encumbrances by virtue of the presence of a lien for taxes at the time of the conveyance, the covenant was broken eo instanti with delivery of conveyance, and the statute was set in motion at that time; that more than six years had run since the statute was set in motion, and that the plainiff was therefore barred. The plaintiff contended that the statute was set in motion, as far as the action for the recovery of the $126.56 was concerned, at the time when said money was paid to the county, to wit, on May 22, 1928. This makes the issue between the parties.

The plaintiff bases his contention on two propositions: First, that the covenant against encumbrances runs with

the land, and therefore can be sued on when the holder of the land is damaged, regardless of whether six or more years have run since the conveyance; and, second, that under the modern view of the law a covenant against encumbrances is to be deemed a contract to indemnify, and that the obligation to indemnify only arises when there is something to be indemnified for.

Evidently in England a covenant against encumbrances was deemed as a covenant for quiet enjoyment and required an eviction, constructive or actual, by the lienholder before the covenantee or his assigns could sue for substantial damages. It was also held in England to run with the land. In this country, the early decisions held otherwise. Most of the eastern states early held that a covenant that "I am seised," a covenant that "I have good right to convey," and the covenant that the premises were free of all encumbrances, were covenants in praesenti, and that if the facts covenanted to be true were not so, the covenants were broken when made, and the right to enforce them was a chose in action, which, according to the common law, could not be assigned so as to enable an assignee to bring an action in his own name. But the covenant "I will warrant and defend" (generally called warranty of title) and the covenant for the quiet enjoyment were in futuro and ran with the land, and that whenever the covenantee or his assigns was evicted by title paramount, either constructive or actual, he had a remedy against the covenantor, and not until then. *Thayer* v. *Clemence* (1839) 22 Pick. (Mass.) 490; *Pillsbury* v. *Mitchell* (1856) 5 Wis. 17, where it was held that a covenant against encumbrances does not run with the land, but is a personal covenant, and when broken is a chose in action not assignable; *Chapman* v. *Holmes* (1828) 10 N. J. Law, 20; *Carter* v. *Executors of Denman* (1852) 23 N. J. Law, 260; *Dale* v. *Schively* (1871) 8 Kan. 276, where it was held that a covenant of seisin (held by many decisions to be in the same class as a covenant against encumbrances) is broken as soon as the deed is executed if the title be bad,

and an action lies thereon at once without waiting for a disturbance of the possession; *Health* v. *Whidden* (1844) 24 Me. 383, where it was held that when a mortgage is both an encumbrance and an outstanding title (originally the mortgagor conveyed title to the mortgagee) defeasible upon the performance of a certain condition, the covenantee could elect to redeem and bring suit on the covenant against encumbrances where there had been an encumbrance on the property at the time of conveyance, or he could wait for an eviction and bring an action on the covenant for quiet enjoyment. This case illustrates splendidly the distinction between the two different sorts of covenants, and when, according to the early cases, the cause of action for a breach of both kinds first arose. *Johnson's Administrators* v. *Veal* (1826) 3 McCord (S. C.) 449, where it was held that even under a general covenant of warranty (to warrant and defend) a purchaser might maintain an action against the grantee before eviction if it could be shown that the seller had no title at the time of the sale. The court considered such a situation as if the covenant of warranty was a covenant of seisin, and therefore broken as soon as made, and that the statute of limitations would commence to run from the date of conveyance; but that if it was a covenant for quiet enjoyment only, then the statute would not begin to run until eviction. It was mostly an accepted principle that even under a general covenant of warranty an action could be brought at once where the covenantee could not obtain actual or constructive possession, that is, where the holder of paramount title was in constructive or actual possession. It was then considered as if there was a constructive eviction of the covenantee at the very moment of the conveyance by his grantor. See *Blondeau* v. *Sheridan* (1884) 81 Mo. 545. It was further held that in such case even a covenant of warranty did not run with the land, because there was nothing with which it could run. See *Moore* v. *Merrill,* (1845) 17 N. H. 75, 43 Am. Dec. 593, where it was held that a "covenant of warranty, if possession attend the title

assumed to be made by the deed, runs with the land; but if nothing pass by the deed, and no possession attend the conveyances, the covenant is not assigned by them." That is to say, if the covenantee did not obtain possession or title, then even a covenant of warranty, like the covenants of seisin, of the right to convey, and against encumbrances, is broken at the time when it is made. See, also, *Slater* v. *Rawson* (1840) 1 Metc. (Mass.) 450. But if the covenantee obtained possession, either actual or constructive, then there was some estate with which the covenant could run; otherwise, he only had a mere chose in action, and a covenant could not run with a mere chose in action. *Matteson* v. *Vaughn,* 38 Mich. 373. Further cases holding that the three covenants first above named, including the covenant against encumbrances, do not run with the land are: *Marbury* v. *Thornton* (1886) 82 Va. 702, 1 S. E. 909; *Davis* v. *Lyman* (1826) 6 Conn. 249; *Watters* v. *Bagley* (1902) 3 Neb. (Unof.) 706, 92 N. W. 637; *Allen and Brown* v. *Little* (1853) 36 Me. 170; *Lawrence* v. *Montgomery* (1869) 37 Cal. 183; *Salmon* v. *Vallejo* (1871) 41 Cal. 481, 482. In the case of *McPike* v. *Heaton* (1900) 131 Cal. 109, 63 P. 179, 82 Am. St. Rep. 335, it was held that a covenant against encumbrances of taxes "is a personal covenant, as would be any covenant against encumbrances, express or implied, which does not run with the land, or pass to an assignee, or succeeding grantee. A succeeding grantee who has paid the taxes cannot maintain an action against the first grantor upon the covenant implied from his deed of grant." *Buren* v. *Hubbell* (1893) 54 Mo. App. 617, 624.

Some of the states, especially in recent years, have swung the other way as to a covenant of seisin and a covenant against encumbrances running with the land. See note to 17 L. R. A. (N. S.) 1191, where it is said, anent the covenant of seisin cases of In re *Hanlin's Estate,* 133 Wis. 140, 113 N. W. 411, 17 L. R. A. (N. S.) 1189, 126 Am. St. Rep. 938, and *Brooks* v. *Mohl,* 104 Minn. 404, 116 N. W. 931, 17 L. R. A. (N. S.) 1195, 124 Am. St. Rep. 629, "these two

cases indicate the undoubted trend of the later decisions." In the case of In re *Estate of Hanlin*, 133 Wis. 140, 113 N. W. 411, 17 L. R. A. (N. S.) 1189, 126 Am. St. Rep. 938, it was held that a "covenant against encumbrances is one of indemnity, and, as to substantial damages for its breach, runs with the land, the action therefor not accruing until the damages are suffered; but there is also an action for mere nominal damages accruing at the instant of the delivery of the deed and becoming a mere chose in action, enforceable by the covenantee or his assignee." We shall have more to say about this later in the opinion. In *Leet* v. *Gratz* (1907) 124 Mo. App. 394, 101 S. W. 696, 699, where it was said,

"The rule respecting the implied covenant of seisin—that is a covenant in praesenti is broken, if at all, when made, and the essential consequences of its strict application to the effect that there is but one breach for which but one recovery is permitted—does not obtain in Missouri. On the contrary, it has been settled with us from an early period in the judicial history of the state that the covenant of indefeasible seisin implied in the statutory words 'grant, bargain and sale' is more than a covenant in praesenti. It is, in fact, when either some title, although defeasible or possession of the premises accompanies the deed, a continuing covenant of indemnity having capacity to run with the land, annexed and incident to the indefeasible estate, if it be such, * * * or if it be defeasible, and some title is conveyed, then to the defeasible estate, * * * or if possession be given under the deed, and no title, then as incident to such possession, * * * and so on to successive grantees, until the paramount title is asserted and results in damage to the actual possessor."

In other words, this case held that a covenant of seisin was in the same category as a covenant of warranty, but a covenant against encumbrances in Missouri, if we can judge by the case of *Buren* v. *Hubbell*, supra, is still unassignable and does not run with the land. It was stated in the Buren Case that,

"It is the well settled law in this state that a covenant against incumbrances is a covenant in presenti and is broken the instant it is made."

This seems anomalous. In most jurisdictions a covenant of seisin is treated in the same class as a covenant against encumbrances; yet in Missouri a covenant of seisin is treated in the class of a covenant of warranty and runs with the land, whilst a covenant against encumbrances is held not to run. In fact, as shown hereafter, it is more consistent to hold that a covenant of seisin should not run with the land because usually an entire and complete damage is ascertainable immediately; otherwise, with a breach of a covenant against encumbrances *where there exists a money charge,* and especially since the cases hold that the damage in such case cannot be recovered ahead of payment of the charge by the covenantee. At any rate, the Leet Case shows a tendency to treat these covenants as running with the land. See Note to 17 L. R. A. (N. S.) 1179, et seq., as to covenant of seisin. Also *Brooks* v. *Mohl,* 104 Minn. 404, 116 N. W. 931, 17 L. R. A. (N. S.) 1195, 124 Am. St. Rep. 629. In the case of *Post* v. *Campau* (1879) 42 Mich. 90, 3 N. W. 272, 275, in a very able opinion, Mr. Justice Cooley drew a distinction between encumbrances which were permanent and which were burdens upon the title, such as an easement, a right to take timber, or a condition which might work a forfeiture of the estate, and those encumbrances, such as liens, which were capable of being removed at the option of the covenantee. The former kind, Judge Cooley suggested, permanently reduced the value of the title conveyed and thus could be ascertained as much at the time of the conveyance as at any future time, and that therefore it was reasonable to hold that a covenant against them was broken at once and finally, because the covenantee could proceed at once to recover full damages. "But when the covenant consists of a recovery charge, capable of being removed at some time, but which has as yet caused no loss to the covenantee, the doctrine that because the promise of the covenant is technically broken by the existence of the encumbrance, must often in its application prove a denial of justice." Judge Cooley stated that:

"It is only by thus distinguishing between encumbrances that the covenant can have reasonable effect in all cases, and, when the courts thus discriminate, there is no difficulty in giving substantial redress under definite and inflexible rules of law. When the law can be just and also certain, there is no reason why an unjust certainty should be perpetuated."

In the opinion of that noted jurist, a covenant consisting of a right of way would not run with the land, "but a covenant against a money charge must attach itself to the title conveyed, and accompany it, not only for the protection of the covenantee, but for the protection of any of his assigns, whom the encumbrance may eventually damnify." Judge Cooley stated that he realized that his view was opposed to the decided current of American authority, but that he was supported by adjudications in the states of Ohio, Illinois, and Iowa, and found some support in Missouri and Indiana. We have already referred to the Missouri cases. This was in 1879· We believe that there has been more of a swing to Judge Cooley's view, and that today many respectable authorities consider that a covenant against encumbrances, when it applies to money charges or liens against lands which can be removed by payment, is to be considered as a covenant to indemnify. See *Thompson* v. *Conran's Estate* (Mo. App.) 181 S. W. 595, which, in effect, overrules the earlier case of *Buren* v. *Hubbell*, supra. In *Brooks* v. *Mohl*, supra, it was held in the case of a broken covenant of seisin that the vendee's right of action against the warrantor does not date from the time the deed is delivered so as to be barred by the statute of limitations six years thereafter.

In the instant case it is possible to determine the question of whether the statute is set in motion at the date of the extinguishment of the lien without deciding whether a covenant against encumbrances runs with the land. Certainly if it does, a grantee from the purchaser and any successive grantee may sue and the statute of limitations does not begin to run against the payment of the money to relieve the land of the charge until it is paid. In

this case, as in the case of *Post* v. *Campau,* supra, there was no transfer of the title by the covenantee, that is, by Soderberg. He still retained it at the time he paid the money and at the time he brought suit. Therefore, the question as to whether a remote grantee may sue is not involved. We have considered the question of whether a covenant against encumbrances runs with the land, because if it should have been determined that it did, it would have settled this matter at all events in favor of plaintiff. Be that as it may, we believe that the plaintiff's action in this case is not barred by the statute, whether it is put upon the basis that a covenant against encumbrances runs with the land or upon the basis that it is, in effect, an indemnity agreement, which may be another way of saying the same thing, or whether it is placed upon the theory that a new cause of action arises when the money is paid. In the case of *Leet* v. *Gratz,* supra, it was held in the case of a covenant of seisin that an action might be brought at once by the covenantee so as to recover for the technical breach, and then later another action could be brought, when substantial damages accrue because of the covenantee being evicted, or when he paid off the debt with regard to which it was a lien. It was held in the Leet Case that this would not be spliting causes of action, because they were different causes of action, and could not be litigated in one suit unless they both arose before the time of bringing the action.

It has been held that damages cannot be recovered by the covenantee for what it would cost to extinguish the lien until he has in fact extinguished it. See *King* v. *Union Trust Co.,* 148 App. Div. 110, 133 N. Y. S. 18, 19. That is to say, no substantial damages arise in favor of the covenantee merely because of the existence of an encumbrance until he actually pays it off, either voluntarily or under compulsion, to save the property from forced sale, or has been evicted because of it. See note to 44 A. L. R. 410. In the case of *Wright* v. *Boggess,* 24 Cal. App. 533, 141 P. 1082, a fairly recent California case, it is stated that, "While the covenant against

incumbrances was broken as soon as made (*Salmon* v. *Vallejo*, 41 Cal. [481] 484), yet as respects the measure of damages recoverable, it must be deemed merely a covenant to indemnify the grantee for damages or loss sustained." Seemingly, the courts have had difficulty in fastening upon a clean-cut theory upon which to permit the buyer of property to bring an action for the recovery of money paid to extinguish an encumbrance in order to save the action from that period of the statute of limitations which has run from the date the buyer received the conveyance containing the covenant against encumbrances. As stated before, some have considered that a second cause of action arises upon the payment of the money which sets the statute in motion. This was the case in *Re Estate of Hanlin,* supra, where it was held that:

"The statute of limitations commences to run only from the time the cause of action accrues, and a cause of action does not accrue until the person owning it can successfully maintain an action thereon; the unfailing test is to decide upon the precise point of time when the owner of the right can institute a suit to enforce it and prosecute the same to a successful result."

The difficulty with holding that a cause of action arises each time that the buyer is forced to extinguish a lien is that it runs afoul of a number of those cases where a cause of action accrues at one time and consequential damages ensue from said cause at a later date. Thus, it is stated in the note to 126 Am. St. Rep. 944, that:

"An action resting upon a breach of contract generally accrues at the time the contract is broken, although substantial damages from the breach are not sustained until afterward. The gist of the action is the breach, not the consequential damages which subsequently accrue; they are not the result of a new or continued breach, but relate back to the original breach which gave the right of action and without which they could not exist."

In the case of a violation of a covenant against encumbrances, if it is so considered, the breach really is committed

at the time of the conveyance if there is a lien on the premises which the covenantor covenanted was not there. The damage suffered by the buyer because of the necessity to extinguish a charge against the land was a damage suffered because of the failure of the covenantor to convey the property without the said charge, and thus arose from the breach of the covenant, which breach occurred eo instanti at the time of the conveyance. If, on the other hand, the covenant against encumbrances is looked at according to its true content and its true intention, it should be looked at as a covenant to indemnify. Then no breach occurs until the duty to indemnify is violated, that is, until the buyer pays and demands and the covenantor refuses to respond. Until the buyer pays to extinguish the charge against the land, he cannot ask for indemnity. We believe that this view is most consonant with justice and works in harmoniously with the fabric of those cases where an act occurs which is a violation of a duty and thus starts the statute regardless of when the damage may accrue or be felt; such cases, for instance, as the breach of a contract to insure property against loss by fire, where the statute begins to run at the expiration of a reasonable time within which the policy could be issued and not at the time the fire occurred. In a certain class of cases for malpractice on the part of a surgeon, the negligent act may occur a long time before its consequences have reacted against the patient. In those cases the statute is held to run from the time the act causing the damage is done, and not when the damage is felt, although in some cases the difficulty is surmounted by holding the act a continuing one as long as the active cause is still operating, as in the case of a sponge left in a patient, or that the duty to remove it still continues as long as the relationship of doctor and patient continues. Also, the case of attorneys at law and abstracters, the breach of duty occurs when the act of unskillfulness or negligence occurs, according to the holdings of many courts, yet proof of actual damage might not be possible until years later.

We believe that the logical fabric and the law will be better maintained and yet justice be done by holding that a covenant against encumbrances is, in effect, a covenant to indemnify where the encumbrance is a charge or lien against the land which can be extinguished by ■ payment. Thus the statute can be held to begin to run only when the grantee is damnified. In the following cases it was held that the statute of limitations ran from the time that the conveyance was delivered, because the right of action arose at that time. *Guerin* v. *Smith* (1886) 62 Mich. 369, 28 N. W. 906; *Sherwood* v. *Landon* (1885) 57 Mich. 219, 23 N. W. 778, 780. It will be noted that both of these Michigan cases were later than the decision of Judge Cooley in the Michigan case of *Post* v. *Campau*, supra. Both of these cases evidently ignore the case of *Post* v. *Campau*. In the Sherwood Case it was held, quoting from *Matteson* v. *Vaughn*, 38 Mich. 373:

"As the covenants of seisin and against incumbrances were at once broken, the statute of limitations at once began to run against them as against all other personal actions, and they were barred many years since. No reason has been suggested upon which they can be taken out of the statute, and we do not perceive how they can be without entirely disregarding its terms. * * * If a party does not choose to investigate his title, or enforce his possession within the period of limitation, he must take the consequences of his own neglect."

In the case of *Jewett* v. *Fisher* (1899) 9 Kan. App. 630, 58 P. 1023, it was held that the covenant against encumbrances is broken as soon as it is executed if there is upon the land an encumbrance, and a cause of action accrues at once and is barred within five years thereafter. *Westrope* v. *Chambers' Estate* (1879) 51 Tex. 178, was a suit on a covenant of seisin and not against encumbrances. Likewise was the case of *Pierce* v. *Johnson* (1832) 4 Vt. 247. In both these cases it was held that the statute was set in motion at the time of the conveyance, because the covenant was broken as soon as made. Both these later cases were cases involving the violation of a covenant of siesin, and can be dis-

tinguished from a case involving a violation of a covenant against encumbrances where the encumbrance was a money charge against the land, in this, that where the grantor did not have seisin, a situation was not presented where the buyer could voluntarily or was ultimately compelled to pay money to extinguish a lien. If the grantor was not seized at the time he conveyed, a situation arose much like that mentioned by Judge Cooley in cases where there was an encumbrance which permanently affected the title and could not be discharged. In such cases there is no reason why the statute should not be set in motion immediately when the covenant is broken, because the damages for the wrong may be then as completely and fully adjudged as at any other time; but this is not so where a nominal damage could only be obtained at the time when a covenant against encumbrances is first broken, but a later and substantial damage when the buyer was forced to extinguish the lien. And the time that the buyer waits before extinguishing the lien may inure to the benefit of the covenantor, because if the statute runs against the lien debt, there will be a good defense and payment may not be required to extinguish it, and thus the seller never be required to respond.

In *Clark* v. *Swift* (1841) 3 Metc. (Mass.) 390, it was held that:

"If there be an incumbrance on land at the time when it is conveyed with a covenant against incumbrances, the covenant is broken as soon as it is made, a cause of action immediately accrues to the grantee, and unless the action is commenced within twenty years from that time, it is barred by the statute of limitations."

If we consider only the cases founded on a breach of a covenant against encumbrances, the authorities contrary to the rule enunciated in this case, to the effect that the statute is set in motion for the purpose of recovering moneys paid to extinguish a lien when the money is paid, are not formidable. As stated before, we believe that the rule herein enunciated is more in keeping with justice.

While setting forth the facts in this case, we called attention to the fact that in all probability an auditor's deed to this property had been given to the county in 1927 for the unpaid taxes of 1922. In the case of *Bray* v. *Fletcher*, 132 Mich. 272, 273, 93 N. W. 624, it was held that the statute of limitations "against an action for a breach of warranty under a deed of lands in Wisconsin, given when certain taxes were a lien on the land, begins to run from the date of recording the tax deed, as, under the laws of that State, *the recording of a tax deed gives the grantee constructive possession, and amounts to an eviction.*" (Italics ours.) It must be presumed that the treasurer in this case recorded the auditor's deed which by law he was required to do. If it is the case that such recordation was a constructive eviction of the plaintiff in this case, and if the recordation was not made before the 29th day of April, 1933, then this suit would have been in time if it had been brought on the covenant of warranty. Or if the plaintiff in this case had not paid the delinquent taxes, but had left the property to be sold by the county to another, and such other had brought ejectment proceedings against the plaintiff and ousted him then plaintiff could have sued on the covenant of warranty which certainly does run with the land and in regard to which the statute is not set in motion until there is an actual or constructive eviction. In such case there would have been an actual eviction. The defendants are therefore not harshly treated by a holding that a covenant against encumbrances as far as a money charge against the land is concerned is to be deemed an indemnity agreement because there were other covenants lurking in the background which, if plaintiff had not paid, would likely have furnished means of redress to him against the defendant.

The judgment is affirmed, with costs to respondent.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.