## MITCHELL v. PALMER et al.

No. 7706.   Decided February 20, 1952.   (240 P. 2d 970.)

See 26 C. J. S., Deeds, sec. 210. Deeds, fraud affecting. 16 Am. Jur., Deeds, secs. 30 et seq. Deeds, acknowledgment of, 16 Am. Jur., Deeds, sec. 90.

*Backman, Backman & Clark,* Salt Lake City, for appellant.

*Richards & Bird, Daniel S. Bushnell,* Salt Lake City, for respondents.

WOLFE, Chief Justice.

Action by the appellant to set aside two warranty deeds executed by him and his late wife, Eliza J. Mitchell, to the respondents and to recover the sum of $2,500 as the proceeds of two postal savings notes allegedly owned by Mr. and Mrs. Mitchell which they assigned to the respondents. In his complaint, the appellant alleged that the deeds and the postal savings notes were obtained by false and fraudulent representations made by the respondents who are the children of Mrs. Mitchell by a former marriage. The respondents denied the fraud and as an affirmative defense

alleged that the property to which deeds had been executed by their mother and the appellant had been purchased with funds received from the sale of property in Idaho formerly owned by the respondents. They requested the court to impress a trust in their favor upon the property in the event the court declared the deeds invalid. After presentation of the appellant's evidence at the trial, the court granted an involuntary dismissal of his claim for the proceeds of the postal savings notes because it appeared that he had not owned at any time any interest in the notes. As for the deeds executed by the appellant and his late wife, the court found, after submission of the case, that they had not been obtained by any fraudulent representations and therefore refused to declare them invalid. On this appeal the appellant assails the lower court's holding in regard to the deeds, but does not raise any question as to the proceeds of the postal savings notes.

In 1937, the respondents' mother who was then a widow conveyed to her son, Floyd Palmer, in trust for himself and his brothers and sister certain property in Preston, Idaho, reserving for herself a life estate therein. Subsequently, in 1943, after her marriage to the appellant, Mrs. Mitchell, the mother of respondents, sold one of the homes on that property and in order for her to make the sale, all her children quit-claimed their interest in the home to her. Three years later she sold the remainder of the Idaho property and again the respondents executed quitclaim deeds to her to enable her to make the conveyance. At that time Mr. and Mrs. Mitchell moved to Salt Lake City and purchased a home on Garfield Avenue and later another home on Wilmington Avenue. Title to both homes was taken in the names of the Mitchells as joint tenants and payment for them was made from a joint banking account to which both contributed funds. However, it appears that the proceeds received by Mrs. Mitchell from the sale of the Idaho property which she deposited in the joint account constituted the

greater part of the purchase price of the two homes in Salt Lake City.

On May 31, 1948, Merlin and Floyd Palmer, two of the respondents, were visiting their mother and the appellant at the latter's residence on Wilmington Avenue. Mrs. Mitchell was ill. As to what was said and transpired upon this occasion, there is a conflict of testimony. According to the respondents, their mother requested Merlin and Floyd to have title to the Salt Lake City homes changed from joint tenancy to Floyd as trustee for himself and his brother and sister, as the title to the property in Idaho had been held. However, she expressed the desire that the appellant be given a life estate in the home on Wilmington Avenue. The appellant thereupon stated that all he wanted was a place to live for the remainder of his life. Pursuant to his mother's request, Merlin had deeds prepared conveying the properties to Floyd in trust. Mrs. Mitchell signed the deeds in her home the next day in the presence of Merlin and the appellant and the latter signed the deeds shortly thereafter in the Sugarhouse Music Company before Merlin and one Joel Hart. Hart, a notory public commissioned in Idaho, acknowledged the grantors' signatures. Merlin was then handed the deeds and he placed them in a bank safety deposit box to which both Mr. and Mrs. Mitchell also had access. Six days after the death of Mrs. Mitchell, on December 23, 1948, Merlin withdrew the deeds from the safety deposit box and had them placed on record in the office of the recorder of Salt Lake County.

The appellant admitted signing certain papers on or about June 1, 1948, but he contended that he did not know that they were deeds. He testified that prior thereto Floyd and Merlin had advised their mother and him to make Floyd trustee of certain postal notes owned by Mrs. Mitchell in order that they would not sustain a forty percent discount by retaining them. Thus when Merlin presented to him papers for his signature, he thought that they were the necessary papers to effectuate that purpose. He denied

having signed any papers in the presence of Joel Hart and maintained that it was over a year after his wife's death before he found out that he had executed deeds to the Salt Lake City homes. It is admitted that Mr. Mitchell received no consideration for executing the deeds.

The trial court's determination that the appellant knowingly and willingly, and free from any misrepresentation as to the nature and content of the instruments, executed the deeds to the Salt Lake City properties, reserving for himself only a life estate in the Wilmington Avenue property, is clearly sustained by competent evidence. The respondents' witness, Hart, testified that when Mrs. Mitchell sold the Idaho homes, she told him she intended to buy property in Salt Lake City and place title thereto in trust for her children. After she had purchased the Salt Lake City homes she had another conversation with Hart in which she again expressed the same intention. Floyd Palmer testified that on May 31, 1948, when he was visiting his mother, she remarked that she had been to see the respondents' attorney to have him place the title in trust, but that he was not in his office. According to both Floyd and Merlin, Mrs. Mitchell at that time directed them to obtain deeds which would accomplish that purpose, except that Mr. Mitchell should have a life estate in the home on Wilmington Avenue. It was at that time that the appellant, according to Floyd and Merlin, declared that all he wanted was a place to live for the rest of his life. The next day after the deeds had been prepared but before they were signed by Mr. Mitchell, Merlin testified that the appellant read the deeds and Mr. Hart explained to him that he would have only a life estate in the Wilmington Avenue home. Within a few weeks after the death of Mrs. Mitchell, the appellant signed an agreement that the furniture, household fixtures and appliances in the Wilmington Avenue home would be "held intact until dissolution of the life estate." He admitted signing the agreement but claimed he did not read the reference therein to the life estate. The

home on Garfield Avenue was at the time of Mrs. Mitchell's death being sold under contract and except for the monthly payment made by the purchaser in January, 1949, the month following Mrs. Mitchell's death, all payments made after her death were paid to the respondents. On March 25, 1949, Floyd Palmer wrote the appellant a letter in which he made reference to the latter's life estate in the Wilmington Avenue property. Thus it is evident that the trial court had competent evidence before it to base its determination in favor of the respondents upon and to reject the appellant's claim that he was defrauded as to the content of the instruments which he signed, discovering not until the early part of 1950 that he had divested himself of title except for the life estate.

Appellant assigns as error the trial court's ruling that the question of delivery of the deeds was not involved in the case. We find no error in this regard. In his complaint, the appellant sought to have the deeds set aside on the ground that he had been deceived by Floyd and Merlin Palmer as to the nature of documents which were presented to him for his signature and that he signed the deeds thinking they were necessary papers to make Floyd Palmer trustee of the postal savings notes. Nowhere is it alleged in the complaint that the deeds were not validly delivered to the respondents. At the trial, counsel for the appellant while cross-examining Merlin Palmer asked him certain questions concerning what instructions Mrs. Mitchell had given him in regards to recording the deeds. Counsel for the respondents objected to that line of questioning on the ground, among others, that the questions were immaterial and irrelevant to the case. In answer to this objection, counsel for the appellant stated that the questions bore upon the question of delivery of the deeds. The court thereupon sustained the objection, ruling that question of delivery had not been raised in the case. No motion was made by appellant's counsel, as could have been done under Rule 15(b), Utah Rules of Civil Pro-

cedure, to amend the complaint in order that the court could consider the question of delivery. It is true, as pointed out by the appellant, that in the prayer of his complaint he prays that the deeds

"be declared null and void and of no force or effect, and that it be decreed that the [respondents] or either of them have no right, title, claim or interest in any property herein described."

This prayer, however, does not open the door to allow the trial court to find the deeds invalid on any ground which might be urged at trial. The prayer that the deeds "be declared null and void" must be restricted to the ground set forth in the complaint, viz. fraud, or tried by the express or implied consent of the parties. Rule15(b) U. R. C. P.

At the trial it appeared from evidence adduced that, contrary to the certificates of the notary public, Hart, affixed to the deeds, Mrs. Mitchell did not in fact personally appear before Mr. Hart on June 1, 1948 and acknowledge her signatures on the deeds. It further appeared that Hart was commissiond as a notory public in the State of Idaho and not in Utah. However, the trial court held that whether the deeds were properly acknowledged and certified was of no consequence in the case since a deed need not be acknowledged to be valid between the parties thereto, but that it was a requirement only with respect to recordation. Unquestionably this ruling is correct. Section 78-1-6, Utah Code Annotated, 1943, provides:

"Every conveyance of real estate, and every instrument of writing setting forth an agreement to convey any real estate or whereby any real estate may be affected, to operate as notice to third persons shall be proved or acknowledged and certified in the manner prescribed by this title and recorded in the office of the Recorder of the County in which such real estate is situated, *but shall be valid and binding between the parties thereto without such proofs, acknowledgment, certification or record,* and as to all other persons who have had actual notice." (Italics added.)

The judgment below is affirmed. Costs to the respondents.

WADE, McDONOUGH, CROCKETT and HENRIOD, JJ., concur.