Boyd McDOWELL III, et al., Plaintiffs,

v.

Louis SULLIVAN, etc., Defendant.

No. 90 C 4724.

United States District Court,
N.D. Illinois, E.D.

Aug. 31, 1990.

Boyd McDowell III, McDowell & Colantoni, Ltd., Chicago, Ill., for plaintiffs.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's August 20, 1990 memorandum opinion and order, 132 F.R.D. 498 (the "Opinion") was issued sua sponte after this Court had performed its universally-followed practice of reviewing newly-filed complaints for potential subject matter jurisdictional problems.[1] After identifying some of the relevant considerations, Opinion at 500 directed plaintiffs Boyd McDowell III ("McDowell") and Anthony Colantoni ("Colantoni") to file a memorandum addressing those matters. McDowell and Colantoni have since then filed a timely Memorandum in Support of Standing.

■ After outlining the history of the National Childhood Vaccine Injury Act (the "Act"), under Section 300aa–31(a)[2] of which they have brought this action, McDowell and Colantoni set out under the heading "Additional Facts" some matters that they characterize this way (Mem. 3):

1. See *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.1986): The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.
2. As in the Opinion, provisions of the Act will be cited "Section—," referring to the Title 42 numbering rather than to the Act's internal section numbers.
3. Both McDowell and Colantoni set out in their affidavits that they are fathers of young children who have received immunizations with vaccines that are subject to the special excise tax (see 26 U.S.C. § 9510) that creates the "Vaccine Injury Compensation Trust Fund" to provide compensation for individuals injured after October 1, 1988 (the effective date of the Act). Both are also members of Dissatisfied Parents Together, described as "a not-for-profit parents' support and education group and long-standing advocate of rights for vaccine-damaged children" (Mem. 4). And both are (of course) taxpayers.
4. Although this Court therefore need not address the matters advanced by McDowell and Colantoni, it is worth noting that:

Not pled, but offered herewith in the form of affidavits (See Exhibits 1 and 2 attached hereto), are additional facts pertinent to this Court's consideration of the issue of standing.

But it is fundamental that complaints may not be amended by lawyers' legal memoranda (see, e.g., *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir.1989); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)). Thus even if the added factors that McDowell and Colantoni say confer standing[3] could suffice to do that, the present Complaint must be judged *as it is framed*—without reference to those unpleaded assertions.[4]

Next McDowell and Colantoni turn to their "Argument," which they begin by acknowledging the force of both *Linda R.S. v. Richard D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (cited and quoted in Opinion at 499–500) and *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975) (citation omitted, emphasis added), which has become recognized as perhaps the leading authority (or at least one of the leading authorities) as to the Article III standing requirement:

1. Nothing at all is presented to support the idea that they, who are concededly knowledgeable about the Act and whose children concededly do not fall into the group for whom McDowell and Colantoni seek to sue here (those injured *before* October 1, 1988 by vaccines subject to the Act), can even arguably have Article III "case" or "controversy" standing stemming from their fatherhood of those children. Indeed that would really be a contradiction in terms.

2. Institutional standing of interested organizations such as Dissatisfied Parents Together cannot be bootstrapped into such Article III standing unless some member of the organization has that standing on his or her own (*Automobile Workers v. Brock*, 477 U.S. 274, 281–82, 106 S.Ct. 2523, 2528, 91 L.Ed.2d 228 (1986)). And nothing is suggested to support the notion that the other members of Dissatisfied Parents Together are in any different posture from McDowell and Colantoni in that respect.

3. McDowell's and Colantoni's taxpayer status will be dealt with later in the text.

Moreover, Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules. Of course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury *to himself,* even if it is an injury shared by a large class of other possible litigants.

But having done so, their Mem. 4 goes on to urge:

However, they posit, alternatively, that they are either under the threat of injury by the Secretary's failure to give reasonable publicity to the Program, or that because of the unique circumstances of this set of facts an exception to the general rule should be advanced.

■ As for the latter alternative, essentially McDowell and Colantoni say that the Article III demand for standing creates a Catch–22 as to Section 300aa–10(c), in which (1) those who *are* aware of the National Vaccine Injury Compensation Program (the "Program") do not have standing to complain of the failure of defendant Department of Health and Human Services Secretary Louis Sullivan ("Secretary") to give it publicity, while (2) those who *are not* so aware of the Program necessarily also lack the knowledge to bring suit based on Secretary's claimed failure to "undertake reasonable efforts to inform the public of the availability of the Program." Because they say there is a demonstrated need for Secretary's performance of his statutory obligation under Section 300aa–10(c), they say that either they or someone like them must be recognized as having standing—or perhaps that McDowell and Colantoni should (wearing their professional hats as lawyers) be permitted instead to sue for a "John Doe" plaintiff.

Both those possibilities must be rejected. Neither this Court or any other federal court is empowered to give a litigant a pass where the constitutional limitations on federal jurisdiction are implicated. Even though the dilemma McDowell and Colantoni identify may be real, and it is not of their own making, they fail to perceive that the flaw may be inherent in the very nature of Secretary's duty as specified in Section 300aa–10(c), as impacted by the demands of Article III. Congress cannot rise above the Constitution either, and if the "any person" enforcement language of Section 300aa–31(a) cannot constitutionally interact with Secretary's claimed nonperformance of his duty under Section 300aa–10(c), it is Article III and not Section 300aa–31(a) that must prevail. And the very dilemma that has been posed by McDowell and Colantoni means that any "John Doe" (who must be a *real* though unidentified person for case or controversy purposes) must perforce belong either to group (1) referred to in the preceding paragraph—and must therefore lack standing—or group (2) identified in the same paragraph—and must therefore be nonexistent as a real plaintiff.

That leaves only the final ground asserted by McDowell and Colantoni, the first alternative quoted from their Mem. 4. On that score they say they "are being injured by the misuse of the funds their tax dollars helped to finance" (Mem. 7). But it is clear upon examination that this fallback position does not survive analysis either.

■ First, in terms of general taxpayer standing, it has been good law for decades that federal jurisdiction in Article III constitutional terms (unlike standing under the law of such states as Illinois) cannot rest on that status (contrast *Flast v. Cohen,* 392 U.S. 83, 101–06, 88 S.Ct. 1942, 1953–56, 20 L.Ed.2d 947 (1968) with *Frothingham v. Mellon,* 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923)—*Flast* making it plain that Article III standing in taxpayer suits requires the same "personal stake" that was required by *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962) and that has been reconfirmed by *Warth* and all cases since). Indeed, in challenging the alleged "misuse" of funds, McDowell and Colantoni are foreclosed by the principle stated in the per curiam opinion in *City of Evanston v. Regional Transportation Authority,* 825 F.2d 1121, 1126–27 (7th Cir. 1987) (citations omitted), which except for the fact that a different statute was involved might well have been written for this case:

Plaintiffs lack taxpayer standing. Taxpayer standing is limited to challenges directed at congressional actions. The plaintiffs' challenge is to the use of federal funds provided to the RTA by UMTA. This grant of federal funds is an action undertaken by the executive branch, involving no congressional action.

 Second, in terms of the "special status" claimed by McDowell and Colantoni—as parents whose children have been immunized and who "are therefore in that group of people subject to the excise tax added to the cost of the immunizations their children have received" (Mem. 7)—precisely the same principle dooms any claim in that respect. But what they also gloss over is that they seek to exercise that "special status" *not* on their own behalf, but rather on behalf of the entirely different group of persons who have *not* been informed of the Act. Again one of our Court of Appeals' opinions addresses the issue and torpedoes the McDowell–Colantoni claim. After quoting the principle from *Linda R.S.*, 410 U.S. at 617 n. 3, 93 S.Ct. at 1148 n. 3 that "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1526 (7th Cir.1990) (emphasis in original) goes on to say:

It is true that these must be *substantive* rights. Congress may not circumvent Article III by authorizing someone whose substantive rights have *not* been invaded to sue to redress an invasion of someone else's substantive rights.

To the extent McDowell and Colantoni seek to act as surrogates for the assertion of rights of persons *not* informed of the Act, Section 300aa–10(c) cannot constitutionally be read to permit such action.

### Conclusion

This opinion should not be mistaken as a determination that Section 300aa–31(a) is unconstitutional. There may well be provisions of the Act other than Section 300aa–10(c) as to which "any person" may demonstrate the necessary Article III "case" or "controversy"—the constitutional component of standing—to enable such person to bring suit. All that is decided here is that McDowell and Colantoni have not done so as to Section 300aa–10(c), the sole subject matter of this action. This action is accordingly dismissed for lack of subject matter jurisdiction.