2002 UT 38

**HOLMES DEVELOPMENT, LLC,
Plaintiff and Appellant,**

. v.

**Paul COOK, an individual, Cook Development, LC, a Utah limited liability company, and First American Title Insurance Company, a California corporation, Defendants and Appellees.**

No. 20000745.

Supreme Court of Utah.

April 16, 2002.

---

Barry N. Johnson, Daniel L. Steele, Salt Lake City, for plaintiff.

Gregory N. Jones, Gifford W. Price, Salt Lake City, for Cook and Cook Development.

Alan L. Sullivan, Robert W. Payne, Salt Lake City, for First American Title.

RUSSON, Justice.

¶ 1 Holmes Development, LLC ("Holmes"), appeals from an order granting summary judgment to First American Title Insurance Co. ("First American") and from an order granting summary judgment to Paul Cook ("Cook") and Cook Development, LC ("Cook Development"). We affirm.

## BACKGROUND

¶ 2 The parties to this appeal do not dispute the material facts. In 1993, Cook purchased two parcels of land in Heber City, Utah. One parcel was approximately 323 acres, and the other parcel was approximately 73 acres. Cook began subdividing and developing the larger parcel. Eventually, Cook conveyed the two parcels to Cook Development, a Utah limited liability company. Cook is, and has been at all relevant times, the principal member, the manager, and the registered agent of Cook Development.

¶ 3 To further the development of the property, Cook Development associated with Premier Homes ("Premier") to infuse cash into the project. In October 1997, Cook Development and Premier formed two limited liability companies known as Lake Creek Farms, LC ("LC Farms"), and Lake Creek Associates, LC ("LC Associates"). Cook Development conveyed the 323–acre parcel to LC Farms and the 73–acre parcel to LC Associates.

¶ 4 Eventually, Premier and Cook Development decided to part ways and agreed that deeds would be executed on behalf of LC Farms and LC Associates to reconvey the 323– and 73–acre parcels, respectively, to Cook Development. To effectuate the parties' agreement, First American prepared two quitclaim deeds, which were signed by Cook on behalf of Cook Development and by an agent of Premier. The quitclaim deed conveying the 323–acre parcel erroneously identified LC Associates, rather than LC Farms, as the grantor.

¶ 5 Immediately thereafter, Cook Development obtained financing from Clark Real Estate and used both parcels as collateral. Neither Cook, Cook Development, nor First American discovered the error in the quitclaim deed at that time.

¶ 6 Then, in April 1998, Holmes and Cook Development agreed that Holmes would purchase both parcels from Cook Development. First American was again retained to prepare a title insurance commitment report and to issue a title insurance policy to Holmes. On or about May 20, 1998, Cook Development closed the property sale, conveying both parcels to Holmes by way of warranty deed.

¶ 7 In connection with this closing, First American acted as the escrow agent for the transaction and prepared all the closing documents, deeds, and settlement statements. At closing, First American provided Holmes a title insurance policy that insured both parcels. According to subsection 4(b) of the policy, in the event of a title defect, the policy allowed First American

> to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest, as insured, or to prevent or reduce loss or damage to the insured. [First American] may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy.

In addition, in connection with the transaction, Cook and Cook Development signed an indemnity agreement and a modification and extension agreement on May 19, 1998. Holmes was the other party to these agreements.

¶ 8 After the transaction was consummated, Holmes sought additional financing from Bank One of Utah ("Bank One"). Bank One retained First American to prepare the trust deed and title insurance documents associated with the financing. In July 1998, while

examining the title for the Bank One loan, First American discovered that Cook Development did not validly convey the 323–acre parcel to Holmes because Cook Development never held title to the parcel as a result of the erroneous quitclaim deed that was intended to convey the parcel from LC Farms to Cook Development.

¶ 9 Upon making this discovery, First American immediately attempted to rectify the error, as it was obligated to do under the title insurance policy. Initially, First American contacted Premier and Cook Development, the members of LC Farms, and requested that they execute a corrected quitclaim deed to convey the 323–acre parcel from LC Farms to Cook Development. When Premier refused to sign the deed, First American prepared a special warranty deed whereby LC Farms deeded the 323–acre parcel directly to Holmes. First American prepared the corrective special warranty deed from LC Farms for Cook's signature, and Cook signed the deed.[1]

¶ 10 Then, in November 1998, Premier sold the 323–acre parcel, as a member of and on behalf of LC Farms, to Keystone Development, LC ("Keystone").[2] Realizing that there were various competing claims as to the ownership of the 323–acre parcel, Keystone commenced a quiet title action ("Keystone litigation") and promptly recorded a lis pendens to give notice of the action. Keystone named Holmes, Cook, Cook Development, First American, and Bank One as defendants. First American, pursuant to the title insurance policy, retained legal counsel to defend the named defendants.

¶ 11 In the suit, Keystone contended that LC Farms did not validly convey the 323–acre parcel to Holmes because Cook and Cook Development lacked the authority to convey the property. In addition, Keystone argued that Premier, instead of Cook Development, was the manager of LC Farms and thus able to convey the parcel on behalf of

LC Farms, vesting paramount title to the 323–acre parcel in Keystone.

¶ 12 Defending against Keystone's claims, Cook and Cook Development realized that the special warranty deed did not specify that Cook signed the deed in his representative capacity of Cook Development. In an effort to correct the signature on the special warranty deed, defense counsel prepared an affidavit in which Cook maintained that he intended to sign the special warranty deed in his capacity as the manager of Cook Development, which was a managing member of LC Farms. After eight months of litigation, on June 29, 1999, the trial court granted summary judgment in favor of all defendants and against Keystone. In particular, the court determined that the special warranty deed was a valid instrument of conveyance and that title vested in Holmes.

¶ 13 During the pendency of the Keystone litigation, the lis pendens precluded Holmes from selling a single lot in the 323–acre parcel. In particular, Holmes was unable to avail himself of the prime spring selling season. Additionally, Holmes continued to make interest payments to Bank One in connection with the loan Holmes procured.

¶ 14 As a result, in October 1999, Holmes brought suit against Cook, Cook Development, and First American, seeking recovery for damages suffered in the form of lost profits and lost sales, and reimbursement of interest paid to Bank One that Holmes alleged it would not have been required to pay if Holmes had been able to sell lots. Holmes asserted three causes of action against First American: (1) negligence in (a) preparing the original quitclaim deed conveying the 323–acre parcel from LC Farms to Cook Development where the quitclaim deed named LC Associates as grantor, (b) performing a title search respecting the warranty deed from Cook Development to Holmes, and (c) allowing Cook to sign the special warranty deed in his individual capacity; (2) breach of con-

---

1. It is undisputed by the parties that Cook Development had the authority to convey the 323–acre parcel on behalf of LC Farms to Holmes and that Cook, as the manager of Cook Development, was authorized to sign for Cook Development.

2. Holmes alleged that Premier attempted to sell the 323–acre parcel on behalf of LC Farms to Keystone only because it discovered that the original quitclaim deed from LC Farms had failed to convey the property to Cook Development.

tract/third-party beneficiary liability; and (3) negligent misrepresentation in that the quit-claim deed and the special warranty deed were "representations" from First American upon which Holmes relied to its detriment. Holmes also asserted three causes of action against Cook and Cook Development: (1) negligence, (2) breach of warranty, and (3) indemnification of damages under the indemnity agreement resulting from Cook's, Cook Development's, and First American's alleged negligence.

¶ 15 First American, Cook, and Cook Development all moved to dismiss each of Holmes's claims, or in the alternative, for summary judgment. In its memoranda in opposition, Holmes opposed the motions on legal grounds and also moved for leave to amend its complaint to defeat the motions.

¶ 16 On May 18, 2000, after receiving evidence regarding the propriety of dismissal, the trial court entered summary judgment in favor of First American and denied Holmes's motion for leave to amend the complaint with respect to First American. The trial court stated five independent grounds upon which it relied: (1) First American cured any title defects by September 3, 1998, two months before Keystone initiated the Keystone litigation, and therefore First American did not proximately cause Holmes's damages; (2) First American diligently and timely cured all of Holmes's title problems pursuant to the title insurance policy; (3) the economic loss rule precluded the negligence and negligent misrepresentation claims; (4) First American could not have reasonably expected Holmes to rely on its conduct with respect to the quitclaim deeds, thus barring the negligent misrepresentation claims; and (5) First American and Cook Development did not intend to confer a benefit upon Holmes in March 1998 as a third-party beneficiary, precluding the third-party beneficiary claims as a matter of law.

¶ 17 On August 2, 2000, the trial court entered summary judgment in favor of Cook and Cook Development on three independent grounds: (1) The economic loss rule precluded any recovery against Cook and Cook Development on Holmes's negligence claim; (2) the breach of warranty claims were barred

because any breach of warranty was cured before Keystone filed its lawsuit against Holmes and no damages were alleged to have occurred prior to good title being conveyed; and (3) Holmes's claim for indemnification of damages resulting from these defendants' alleged negligence was barred as being outside the scope of the indemnification agreement. The trial court also denied Holmes's motion for leave to amend its complaint against Cook and Cook Development.

¶ 18 Holmes now appeals both summary judgment orders entered against it and the denials of the motions for leave to amend the complaint. Holmes appeals the summary judgment order in favor of First American, arguing that (1) a question of fact exists as to whether First American took "appropriate action" under the title insurance policy, and (2) First American assumed and breached contractual duties in addition to those of the title insurance policy. In response, First American contends that its actions did not cause Holmes's damages, that it fulfilled all duties it owed to Holmes under the title insurance policy, and that there is no evidence that it breached any contractual duty to Holmes outside of the policy.

¶ 19 Further, Holmes appeals the summary judgment order in favor of Cook and Cook Development, arguing that these defendants (1) breached the covenants of title in the warranty deed, and (2) assumed and breached contractual duties under the indemnification agreement and the modification and extension agreement. In response, Cook and Cook Development contend that any alleged breach of the covenants of title was cured before Keystone initiated its quiet title suit and the actions of Cook and Cook Development therefore were not the cause of Holmes's damages. In addition, Cook and Cook Development contend that Holmes is not entitled to recover under either the indemnity agreement or the modification and extension agreement.

¶ 20 Finally, Holmes argues on appeal that the trial court abused its discretion by failing to grant Holmes's motions for leave to amend its complaint. In reply, First American, Cook, and Cook Development all contend that Holmes improperly moved for leave to

amend and that therefore the trial court did not abuse its discretion in denying the motions.

## STANDARD OF REVIEW

¶ 21 Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c); *see also Ault v. Holden*, 2002 UT 33, ¶ 15, 44 P.3d 781; *State ex rel. Div. of Forestry, Fire & State Lands v. Tooele County*, 2002 UT 8, ¶ 8, 44 P.3d 680. Whether a trial court appropriately granted summary judgment is a question of law. *Hill v. Allred*, 2001 UT 16, ¶ 12, 28 P.3d 1271; *Rivera v. State Farm Mut. Auto. Ins. Co.*, 2000 UT 36, ¶ 8, 1 P.3d 539. In determining if summary judgment was appropriate, we need review only whether the trial court erred by applying the governing law and whether a material fact was in dispute. *Hill*, 2001 UT 16 at ¶ 12, 28 P.3d 1271,. We thus review the trial court's legal conclusions for correctness, according them no deference. *Ault*, 2002 UT 33 at ¶ 15; *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 9, 28 P.3d 669. Further, when we review whether summary judgment is appropriate, " 'we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.' " *Ault*, 2002 UT 33 at ¶ 15 (quoting *DCM Inv. Corp. v. Pinecrest Inv. Co.*, 2001 UT 91, ¶ 6, 34 P.3d 785).

## ANALYSIS

### I. CONTRACT CLAIM AGAINST FIRST AMERICAN

¶ 22 The first issue on appeal is whether the trial court properly granted First American summary judgment on Holmes's contractual claims. The trial court ruled in its order granting First American summary judgment that Holmes had no enforceable third-party beneficiary right in the contract between Cook, Cook Development, and First American. Holmes has not appealed this ruling. Thus, the only possible contract claims that Holmes may have against First American would be predicated upon a direct contract between Holmes and First American.

### A. Title Insurance Policy

¶ 23 In the order granting summary judgment to First American, the trial court concluded that claims under the title insurance policy were "barred as a matter of law by section 9(b) of the First American Title Insurance Policy." Holmes asserts that the trial court erroneously granted summary judgment to First American because there is a question of material fact as to whether First American took "appropriate action" as required by the title insurance policy First American issued as insurer to Holmes as insured.

¶ 24 A title insurance policy, like other insurance policies, serves as a contract between the insurer and the insured, and as such " 'is subject to the general rules of contract construction.' " *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶ 49, 44 P.3d 663 (quoting *S.W. Energy Corp. v. Cont'l Ins. Co.*, 1999 UT 23, ¶ 12, 974 P.2d 1239); *accord First Am. Title Ins. Co. v. J.B. Ranch, Inc.*, 966 P.2d 834, 836 (Utah 1998). Thus, unless the language of the policy is ambiguous or unclear, we construe it according to the policy's " 'plain and ordinary meaning.' " *Miller*, 2002 UT 6 at ¶ 49 (quoting *First Am. Title Ins. Co.*, 966 P.2d at 836). Further, we construe the individual provisions of the insurance policy in light of the policy as a whole. *Id.* at ¶ 49. Whether the trial court was correct in construing the insurance policy to preclude Holmes from suing under it is a question of law that we review for correctness. *Rivera v. State Farm Mut. Auto. Ins. Co.*, 2000 UT 36, ¶ 29, 1 P.3d 539.

#### 1. Section 4(b): Appropriate Action

¶ 25 We need not address whether First American took "appropriate action" because the policy did not require "appropriate action." The plain language of section 4(b) of the policy provides that First American "*may* take any appropriate action under the terms of this policy." (Emphasis added.) The plain, ordinary, and accepted meaning of the word "may" is " 'permissive' or 'dis-

cretionary,'" generally indicating that an individual is either "permitted" or "[h]as a possibility" to do something. *Black's Law Dictionary* 993 (7th ed.1999). The parties use the word "may" in section 4(b) of the policy to set forth their intention that First American has the option to take appropriate action, but is not required to do so. *See generally, e.g., Strawberry Elec. Serv. Dist. v. Spanish Fork City*, 918 P.2d 870, 882 (Utah 1996); *State v. Mohi*, 901 P.2d 991, 1006 (Utah 1995). Inasmuch as "appropriate action" is not mandated by the policy, the need to determine if First American took appropriate action is obviated.

2. Section 9(a): Full Performance of Obligations

■ ¶ 26 Further, according to the plain language of the policy, by defending Holmes in the Keystone litigation and successfully establishing title to the 323–acre parcel in Holmes as against Keystone, First American fully performed its obligations under the insurance policy. Section 9(a) of the policy provides:

> (a) If [First American] *establishes the title,* or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or *cures the claims of unmarketability of title, all as insured, in a reasonably diligent manner by any method, including litigation* and the completion of any appeals therefrom, *it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.*

(Emphasis added.)

¶ 27 First American cured any claims of unmarketability of title by succeeding in establishing title in Holmes by litigation. Section 9(a) expressly provides that litigation is a "reasonably diligent manner" of establishing title and curing any alleged title defects. Therefore, according to the plain language of section 9(a), First American has "fully performed its obligations with respect to that matter" and cannot "be liable for any loss or damage caused thereby."

3. Section 9(b): Limitation on Liability for Litigation

■ ¶ 28 Moreover, First American contracted in section 9(b) to limit its liability under the policy in the event of litigation. *See generally Pac. Am. Constr. v. Sec. Union Title*, 1999 UT 87, ¶ 5, 987 P.2d 45 (" '[P]arties [to a title insurance contract] are free to define the exact scope of the policy's coverage ....' " (citation omitted) (alteration in original)). Section 9(b) states:

> (b) In the event of any litigation, including litigation by [First American] or with [First American's] consent, *[First American] shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title as insured.*

(Emphasis added.)

¶ 29 In the policy, First American contracted to have "no liability" to Holmes under the policy unless a court rendered a final judgment adverse to Holmes's title. *See generally Booth v. Attorneys' Title Guar. Fund, Inc.*, 2001 UT 13, ¶ 32, 20 P.3d 319 (noting that courts will address "damages only if the title is found to have been unmarketable"). In this case, First American defended Holmes in the Keystone litigation, including paying all costs incurred in defending Holmes's title. The result of the Keystone litigation was favorable to Holmes, not adverse, because title to the 323–acre parcel was quieted in Holmes, Keystone's claims to the property were thwarted, and Keystone's lis pendens was removed from the title record. Accordingly, section 9(b) precludes Holmes from recovering further against First American beyond the costs First American incurred defending Holmes's title when the Keystone litigation quieted title in Holmes as against Keystone and no adverse final determination resulted.

*B. Contractual Claims Outside of Title Insurance Policy*

■ ¶ 30 Holmes also contends that First American assumed and breached other first-party contractual duties to Holmes beyond those established in the title insurance policy.

However, we decline to address this issue on appeal as it was never properly raised below.

¶ 31 This claim was originally raised in Holmes's memorandum in opposition to First American's motion to dismiss/for summary judgment, and was not raised in the complaint. A plaintiff cannot amend the complaint by raising novel claims or theories for recovery in a memorandum in opposition to a motion to dismiss or for summary judgment, *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir.1989); *McDowell v. Sullivan*, 132 F.R.D. 501, 502 (N.D.Ill.1990), because such amendment fails to satisfy Utah's pleading requirements. *See* Utah R. Civ. P. 7, 8, 9, 10. Holmes's claims must therefore be restricted to the grounds set forth in the complaint. *Mitchell v. Palmer*, 121 Utah 245, 251, 240 P.2d 970, 972 (1952). Thus, because Holmes failed to raise a breach of contract action in its complaint against First American that was not predicated either upon third-party beneficiary liability or upon the title insurance policy, any claim that First American assumed and breached additional contractual duties to Holmes was waived.

## II. CLAIMS AGAINST COOK AND COOK DEVELOPMENT

### A. *Breach of Covenants of Title*

¶ 32 The next issue on appeal is whether the trial court erred by granting summary judgment to Cook and Cook Development on the breach of covenants of title [3] claims. The trial court granted summary judgment on Holmes's breach of covenants of title claim because any breach was cured before Keystone filed its quiet title action against Holmes.

¶ 33 Even if covenants of title are not expressly set forth in a deed conveying real property, the covenants of title still inhere in a warranty deed as long as the deed is properly executed. The Utah Code provides in pertinent part:

A warranty deed when executed as required by law shall have the effect of a conveyance in fee simple to the grantee, his heirs and assigns, of the premises therein named, together with all the appurtenances, rights, and privileges thereunto belonging, *with covenants from the grantor*, his heirs, and personal representatives, that he is *lawfully seised of the premises*; that *he has good right to convey the same*; that *he guarantees the grantee, his heirs, and assigns in the quiet possession thereof*; that the premises *are free from all encumbrances*; and that the *grantor, his heirs, and personal representatives will forever warrant and defend the title* thereof in the grantee, his heirs, and assigns against all lawful claims whatsoever.

Utah Code Ann. § 57–1–12 (2000) (emphasis added). According to the plain language of the statute, if a warranty deed comports with Utah law, then the five covenants of title articulated therein implicitly apply to the real property conveyance: (1) the covenant of seisin, (2) the covenant of right to convey, (3) the covenant against encumbrances, (4) the covenant of warranty, and (5) the covenant of quiet enjoyment.[4] *Id.* Because the parties do not dispute the viability of the warranty deed or the validity of its execution, the five covenants of title are included in the warranty deed by operation of law. To determine if Cook Development breached these five covenants of title, we must review each of the covenants in turn.

1. Covenant of Seisin and Covenant of Right to Convey

 a. Breach of Covenants of Seisin and Right to Convey

 ¶ 34 Initially, we address whether the trial court properly granted summary

---

3. Covenants of title are also often called warranties of title. *Creason v. Peterson*, 24 Utah 2d 305, 307, 470 P.2d 403, 404 (1970).

4. Utah law recognizes the covenant of further assurances, *see Utah Sav. & Trust Co. v. Stoutt*, 36 Utah 206, 212, 102 P. 865, 868 (1909), but the covenant is not implicit in a statutory warranty deed as are the other five covenants of title explicitly set forth in section 57–1–12, *Ellis v. Hale*, 13 Utah 2d 279, 284, 373 P.2d 382, 386 (1962).

judgment to Cook Development[5] regarding Holmes's claim that Cook Development breached the covenants of seisin and right to convey. In making the covenant of seisin, a grantor warrants that the grantor is seized of the estate the deed purports to convey, both in quantity and quality. Utah Code Ann. § 57–1–12 (2000) (providing that grantor covenants "he is lawfully seised of the premises"); *see also Bosnick v. Hill*, 292 Ark. 505, 731 S.W.2d 204, 206 (1987); *Brown v. Lober*, 75 Ill.2d 547, 27 Ill.Dec. 780, 389 N.E.2d 1188, 1190–91 (1979); *Maxwell v. Redd*, 209 Kan. 264, 496 P.2d 1320, 1324 (1972); *Seymour v. Evans*, 608 So.2d 1141, 1144 (Miss. 1992); *Ives v. Real Venture, Inc.*, 97 N.C.App. 391, 388 S.E.2d 573, 578 (1990); *Double L. Props., Inc. v. Crandall*, 51 Wash. App. 149, 751 P.2d 1208, 1210–11 (1988). Similarly, in making the covenant of the right to convey, a grantor guarantees that the grantor has the legal right to convey the estate the deed purports to convey. Utah Code Ann. § 57–1–12 (providing that grantor covenants "he has good right to convey premises"); *see also Brown*, 27 Ill.Dec. 780, 389 N.E.2d at 1190–91; *Seymour*, 608 So.2d at 1144. Essentially, the covenants of seisin and the right to convey are synonymous, and the analysis of whether a grantor breached one of these covenants is the same for either covenant. *Creason v. Peterson*, 24 Utah 2d 305, 307, 470 P.2d 403, 404 (1970).

¶ 35 Hence, the covenants of seisin and right to convey, if found in a warranty deed, attest that the grantor covenants that it has good title to the estate purportedly conveyed. *See id.* Consequently, the grantor breaches these covenants "when it is shown that the grantor did not own the land that he purported to convey by the warranty deed description." *Id.; see also Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.*, 909 P.2d 225, 233 (Utah 1995). Once evidence is adduced showing the grantor does not own what the grantor purports to convey, in violation of

these covenants of title, there is no need to show "an actual eviction or threat thereof." *Creason*, 24 Utah 2d at 307, 470 P.2d at 404.

¶ 36 These covenants speak only to the circumstances at the moment a grantor delivers a deed and are thus defined as present covenants. 20 Am.Jur.2d *Covenants, Conditions and Restrictions* § 71 (1995) [hereinafter 20 Am.Jur.2d *Covenants*]; *see also Creason*, 24 Utah 2d at 307, 470 P.2d at 404 (stating that no need to await actual eviction or threat thereof to sue for breach of covenants of seisin and right to convey). Thus, a grantor breaches these covenants, if at all, when the deed is delivered. *See Soderberg v. Holt*, 86 Utah 485, 493, 46 P.2d 428, 431 (1935); *see also Bernklau v. Stevens*, 150 Colo. 187, 371 P.2d 765, 769 (1962); *Brown*, 27 Ill.Dec. 780, 389 N.E.2d at 1191; *Double L. Props.*, 751 P.2d at 1210–11; 20 Am.Jur.2d *Covenants* § 71.

¶ 37 In this case, Cook Development breached the covenants of seisin and right to convey because it did not own the 323–acre parcel when Cook Development delivered the warranty deed to Holmes. The quitclaim deed conveying the property to Cook Development from LC Farms failed because it erroneously identified LC Associates as the grantor. Cook Development breached these two covenants regardless of whether that breach was subsequently "cured" by First American's defense of Holmes in the Keystone litigation because the breach occurred when the deed was delivered.

b. Damages for Breach of Covenants of Seisin and Right to Convey

¶ 38 Although Cook Development breached the covenants of seisin and right to convey, summary judgment was nevertheless appropriate in the instant case because the damages were nominal. "The usual measure of damages for breach of covenant ... is compensation for actual loss suffered by reason of the breach." 20 Am.Jur.2d *Covenants*

---

5. Although summary judgment was granted for both Cook Development and Cook, the warranty deed conveying the 323–acre parcel to Holmes was executed by Cook Development only. Because Cook Development is a limited liability company, Utah law proscribes a direct action against Cook for breach of the warranty, although he signed the warranty deed in his capacity as the managing member of Cook Development. Utah Code Ann. §§ 48–2c–116, 48–2c–601 (Supp.2001).

§ 45 (1995). Generally, the measure of damages for breach of the covenants of seisin and right to convey, predicated upon a complete failure of title, is the consideration paid to purchase the property, plus applicable interest and any attorney fees incurred to establish title in the grantee pursuant to the deed. *See, e.g., Koelker v. Turnbull,* 127 Idaho 262, 899 P.2d 972, 976 (1995); *Ralston v. Thacker,* 932 S.W.2d 384, 388 (Ky.Ct.App.1996); *Reese v. Smith,* 12 Mo. 344, 347–48 (1849); *Meyer v. Thompson,* 183 N.C. 543, 112 S.E. 328, 329 (1922); *Sun Exploration & Prod. Co. v. Benton,* 728 S.W.2d 35, 37 (Tex.1987); *Schorsch v. Blader,* 209 Wis.2d 401, 563 N.W.2d 538, 540 (Ct.App.1997); *see also* 20 Am.Jur.2d *Covenants* § 123. The consideration paid is the proper measure of damages at the moment of delivery because the grantee has paid his money, yet did not receive the property. *Reese,* 12 Mo. at 347–48.

¶ 39 However, a covenantee can recover only damages that are occasioned by the breach of these covenants. *See Creason,* 24 Utah 2d at 307, 470 P.2d at 404; *Pac. Bond & Mortgage Co. v. Rohn,* 101 Utah 335, 341, 121 P.2d 635, 637 (1942). For example, in *Creason,* we held that the damages recoverable for breach of the covenants of seisin and the right to convey were limited in that case. 24 Utah 2d at 307, 470 P.2d at 404. Specifically, we held that the plaintiff could recover only damages actually resulting from the breach, which included "reasonable and necessary" costs incurred "to clear up any difficulty [that] would represent a substantial flaw in his title," such as reasonable attorney fees. *Id.* at 307–09, 470 P.2d at 404–05.

¶ 40 In the event that the grantor "cures" the breach by ensuring that title vests in the grantee in fee simple absolute before an action is initiated, then the grantee has not suffered actual damages as a result of the breach. In such a case, any recovery for breach of these covenants is limited to nominal damages for a mere technical breach. *Bair v. Axiom Design, L.L.C.,* 2001 UT 20, ¶ 18, 20 P.3d 388; *Thompson v. Anderson,* 107 Utah 331, 336, 153 P.2d 665, 667 (1944); *Pac. Bond & Mortgage Co.,* 101 Utah at 341, 121 P.2d at 637; *see also, e.g., Perkins v. August,* 109 Conn. 452, 146 A. 831,

833–34 (1929); 20 Am.Jur.2d *Covenants* § 148.

¶ 41 In *Perkins,* the defendant breached the covenants of seisin and good right to convey because another owned an interest in the land purportedly conveyed when the defendant deeded the property to the plaintiffs. 146 A. at 833. Nevertheless, the court determined that the "most [the plaintiffs] could claim would be nominal damages" because the breach was cured when the unowned "interest was conveyed to the plaintiffs at their request and without cost to them before the action was brought." *Id.* The court reasoned that "in effect all technical difficulties [were] healed and the plaintiffs have received in fact just what they purchased." *Id.*

¶ 42 Similarly, in this case, Holmes's recovery is limited to nominal damages. Although Cook Development technically breached the covenants of seisin and right to convey, Cook Development cured the breach by having LC Farms convey the property directly to Holmes by the special warranty deed on September 3, 1998. Additionally, First American defended Holmes in the Keystone litigation pursuant to the title insurance policy Cook Development purchased for Holmes. In the Keystone litigation, First American established that the title to the 323–acre parcel vested in Holmes under the special warranty deed.

¶ 43 Thus, at most, Cook Development technically breached the two covenants. Holmes never incurred actual damages, however, because the breach of the covenants was cured. Indeed, Holmes conceded at oral argument that there were no damages before September 3, 1998, when LC Farms delivered the special warranty deed to Holmes. Further, Holmes can still sell the lots, which may have appreciated in value, and profit therefrom although Holmes claims that it was damaged in lost profits. Therefore, Holmes's recovery is limited to nominal damages. However, we will not remand because we generally do not remand if the damages are only nominal. *Globe Leasing Corp. v. Bank of Salt Lake,* 586 P.2d 420, 422 (Utah 1978); *see also Perkins,* 146 A. at 833–34; *Castor v. Dufur,* 133 Iowa 535, 111 N.W. 43,

46 (Iowa 1907). Thus, we affirm the trial court's order granting Cook and Cook Development summary judgment.

2. Covenant Against Encumbrances

 ¶ 44 Next, we address whether the trial court properly granted summary judgment to Cook Development on Holmes's claim that Cook Development breached the covenant against encumbrances. A grantor in a "warranty deed in Utah warrants to the grantee, among other things, 'that the premises are free from all encumbrances.'" *Webb v. Interstate Land Corp.*, 920 P.2d 1187, 1190 (Utah 1996) (quoting Utah Code Ann. § 57–1–12); *accord Brewer v. Peatross*, 595 P.2d 866, 868 (Utah 1979). "Pursuant to [the] covenant [against encumbrances], a grantor obligates himself either to clear up any encumbrances that may be discovered or to indemnify the grantee." *Upland Indus. Corp. v. Pac. Gamble Robinson Co.*, 684 P.2d 638, 643 (Utah 1984) (last alteration in original). This court has defined an encumbrance as "any interest in a third person consistent with a title in fee in the grantee, if such outstanding interest injuriously affects the value of the property," *Hancock v. Planned Dev. Corp.*, 791 P.2d 183, 186 (Utah 1990) (emphasis omitted), or "constitutes a burden or limitation upon the rights of the fee title holder," *Bergstrom v. Moore*, 677 P.2d 1123, 1124 (Utah 1984). "The question as to whether there is an encumbrance on [the] property must depend upon the facts as they exist at the time the warranty deed is delivered, and not upon subsequent occurrences." *Brewer*, 595 P.2d at 868.

 ¶ 45 Holmes never specifically identifies a particular encumbrance that clouded Holmes's title when Cook Development delivered the warranty deed, which would have given rise to a breach of the covenant against encumbrances. Holmes infers that the lis pendens and the concomitant litigation encumbered the property, thereby breaching the warranty. We have never directly determined whether a lis pendens would constitute an encumbrance that breaches the covenant against encumbrances, *see Utah Sav. & Trust Co. v. Stoutt*, 36 Utah 206, 212, 102 P. 865, 868 (1909); *see also Tolotti v. Equitable Real Estate & Inv. Co.*, 70 Utah 385, 387–95, 260 P. 415, 415–19 (1927), and we need not do so in this case. The lis pendens could not cloud the title when the warranty deed was delivered. Cook Development delivered the warranty deed to Holmes on May 19, 1998, when the sale of the 323–acre parcel closed. Keystone filed the lis pendens after Premier attempted to transfer the 323–acre parcel to Keystone in November 1998. Further, Holmes failed to identify any other encumbrance that existed on the record at the time Cook Development executed and delivered the warranty deed. Accordingly, Cook Development did not breach the covenant against encumbrances.

3. Covenant of Quiet Enjoyment and Covenant of Warranty

 ¶ 46 Finally, we address whether the trial court properly granted summary judgment on Holmes's claim that Cook Development breached the covenants of warranty and quiet enjoyment. According to the covenant of quiet enjoyment, a grantor warrants that the grantee may possess and quietly enjoy the land. Utah Code Ann. § 57–1–12 (2000) (providing that grantor "guarantees the grantee, his heirs, and assigns in the quiet possession" of premises conveyed); *see also Spiegle v. Seaman*, 160 N.J.Super. 471, 390 A.2d 639, 645 (App.Div. 1978). The covenant of warranty is that the grantor will warrant and defend the title of the grantee against rightful claims regarding the title conveyed. Utah Code Ann. § 57–1–12 (providing that grantor covenants that "grantor, his heirs, and personal representatives will forever warrant and defend the title ... in the grantee ... against all lawful claims"); *see also Spiegle*, 390 A.2d at 645; *Morgan v. Reese*, 99 Ohio App. 473, 134 N.E.2d 581, 585 (1954); *City of Beaumont v. Moore*, 146 Tex. 46, 202 S.W.2d 448, 453 (1947). In Utah, both the covenant of warranty and the covenant of quiet possession are synonymous " 'since the same occurrence of circumstances is necessary to their breach,'" they both run with the land, and " 'the rule of damages is the same in [each].'" *Van Cott v. Jacklin*, 63 Utah 412, 415, 226 P. 460, 461 (1924) (citation omitted).

Thus, for purposes of analysis, we consider these covenants simultaneously.

¶ 47 To establish a breach of the covenants of warranty and quiet enjoyment, ordinarily a grantee must show that the grantee was evicted from the property purportedly conveyed via the warranty deed by one with paramount or better title. *Christiansen v. Utah–Idaho Sugar Co.*, 590 P.2d 1251, 1253 (Utah 1979); *E. Canyon Land & Stock Co. v. Davis & Weber Counties Canal Co.*, 65 Utah 560, 564, 238 P. 280, 281 (1925); *see also Van Cott*, 63 Utah at 416, 226 P. at 461. Eviction can be either actual or constructive. *Christiansen*, 590 P.2d at 1253; *Soderberg v. Holt*, 86 Utah 485, 500, 46 P.2d 428, 434 (1935); *E. Canyon Land & Stock Co.*, 65 Utah at 565–66, 238 P. at 281–82.

¶ 48 Before the grantee can recover for breach of these covenants, based upon either an actual or a constructive eviction, the grantee must establish that title has been affirmatively asserted against the grantee's title and possession, and that the title thus asserted is paramount or superior to the grantee's title. *Christiansen*, 590 P.2d at 1253; *see also Lewis v. Jetz Serv. Co.*, 27 Kan.App.2d 937, 9 P.3d 1268, 1270 (2000); *Stevenson v. Ecklund*, 263 Mont. 61, 865 P.2d 296, 298–99 (1993); *Omega Chem. Co. v. Rogers*, 246 Neb. 935, 524 N.W.2d 330, 335 (1994); *Schneider v. Lipscomb County Nat'l Farm Loan Ass'n*, 146 Tex. 66, 202 S.W.2d 832, 834 (1947). Paramount title is one that would prevail over another title in an action or one that would be otherwise successfully asserted against another's title. *Omega Chem. Co.*, 524 N.W.2d at 335; *see also Family Fin. Fund v. Abraham*, 657 P.2d 1319, 1324–25 (Utah 1982); *E. Canyon Land & Stock Co.*, 65 Utah at 564–68, 238 P. at 281–83.

¶ 49 Consistent with these general rules, when a claim of paramount title to property has been defeated, the grantee cannot show eviction and the grantor has not breached the covenants of warranty or quiet enjoyment. *Bloom v. Hendricks*, 111 N.M. 250, 804 P.2d 1069, 1074 (1991); *cf. St. Paul Title Ins. Corp. v. Owen*, 452 So.2d 482, 485 (Ala.1984) ("[A] final judgment or decree *adverse to the covenantee's title or right of possession* constitutes a sufficient constructive eviction to entitle the covenantee to sue for breach of the covenant of warranty." (emphasis added)).

¶ 50 In this case, Holmes failed to establish that paramount or superior title has been affirmatively asserted against Holmes's title and possession. Aside from Holmes's title, the only other claim to the property that has been asserted was Keystone's claim of ownership for which Keystone instigated the Keystone litigation to quiet title to the 323–acre parcel. In that suit, the trial court quieted title to the parcel in Holmes, which conclusively established that Holmes's title to the 323–acre parcel is paramount to any claim Keystone has to the property.

¶ 51 Accordingly, Holmes cannot show that it was ever evicted, either actually or constructively, because Holmes remains in possession of the 323–acre parcel and Holmes's title is not subject to a paramount title. Therefore, inasmuch as Holmes cannot show that it has been evicted from the 323–acre parcel, Holmes cannot show that Cook Development breached the covenants of warranty and quiet enjoyment.

### B. Indemnity Agreement and Modification and Extension Agreement

¶ 52 Holmes also contends that Cook and Cook Development are liable to Holmes under both an indemnity agreement and a modification and extension agreement. However, Holmes lacks standing to sue Cook and Cook Development under these contractual provisions.

¶ 53 Generally, unless a plaintiff can recover on a contract as a third-party beneficiary or an assignee, only parties to a contract can bring suit under the contract. *See SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 10, 28 P.3d 669; *Harper v. Great Salt Lake Council, Inc.*, 1999 UT 34, ¶ 20, 976 P.2d 1213; *M.H. Walker Realty Co. v. Am. Sur. Co.*, 60 Utah 435, 450, 211 P. 998, 1004 (1922). Holmes was not specifically a party to either the indemnity agreement or the modification

and extension agreement. Holmes Ventures, LC, *not Holmes Development, LLC*,[6] was the party to both of these agreements. Assuming Cook and Cook Development were liable under the indemnity agreement and the modification and extension agreement, Holmes would not be able to sue to recover. *See* Utah Code Ann. § 48–2c–110(1) (Supp.2001) (providing that limited liability company can "institute ... any action ... in its *own* name" (emphasis added)). Therefore, Holmes cannot pursue these claims against Cook or Cook Development.

### III. FAILURE TO APPEAL

 ¶ 54 The trial court granted First American, Cook, and Cook Development summary judgment on Holmes's first cause of action, which avers negligence against all three defendants, and third cause of action, which avers negligent misrepresentation against First American, because the economic loss rule barred these claims. *See SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 32, 28 P.3d 669. By failing to address these issues on appeal, Holmes has waived any appeal with respect to Holmes's negligence and negligent misrepresentation causes of action.

 ¶ 55 In addition, the trial court granted summary judgment on Holmes's third-party beneficiary contract claim. However, by failing to appeal that ruling, Holmes has waived any appeal on the issue of whether it was a third-party beneficiary under a contract between Cook, Cook Development, and First American.

### IV. MOTION FOR LEAVE TO AMEND COMPLAINT

¶ 56 The final issue in this appeal is whether the trial court abused its discretion in denying Holmes's motions for leave to amend

its complaint. *See Neztsosie v. Meyer*, 883 P.2d 920, 922 (Utah 1994) ("We will not disturb a trial court's ruling on a motion to amend a complaint absent a clear abuse of discretion."). At the end of Holmes's memorandum in opposition to First American's motion to dismiss,[7] Holmes argued:

> In the event this Court determines that Holmes' Complaint fails to adequately plead the claims and causes of action addressed above, Holmes moves this Court for leave to amend its Complaint pursuant to Rule 15 of the Utah Rules of Civil Procedure. Case law interpreting Rule 15 recognizes that the rules of Civil Procedure liberalize pleading requirements and require that the parties be afforded the privilege of presenting whatever legitimate contentions they may have pertaining to the dispute. *Timm v. Dewsnup*, 851 P.2d 1178 (Utah 1993). Rule 15 further requires that leave to amend "shall be freely given when justice so requires."

Holmes argues that the trial court abused its discretion in denying its motions for leave to amend.

 ¶ 57 Rule 15(a) of the Utah Rules of Civil Procedure provides that after a responsive pleading has been served, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Utah R. Civ. P. 15(a). To properly move for leave to amend a complaint, a litigant must file a motion that "shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." Utah R. Civ. P. 7(b)(1); *see also Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179, 1182 (Utah 1983); *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir.1999). Further, a motion for leave to amend must be accompanied by a memorandum of points and authorities in support, R. Jud. Admin. 4–501(1)(A), and by a pro-

6. It may be that Holmes Development, LLC, and Holmes Ventures, LC, have the same management and may be practically indistinguishable. However, the two are legally separate entities and were created as separate entities for a purpose. *See* Utah Code Ann. § 48–2c–402 (Supp. 2001). Therefore, we refuse to recognize them as the same entity for standing to sue on a contract.

7. There is a similar motion at the end of the memorandum in opposition to Cook and Cook Development's motion to dismiss/for summary judgment. However, it contains no citations to rule 15 or any cases and is set forth in a conclusory statement in the conclusion section to the memorandum.

posed amended complaint, *Behrens,* 675 P.2d at 1182; *see also Long,* 181 F.3d at 1279; *AT & T Corp. v. Am. Cash Card Corp.,* 184 F.R.D. 515, 520–21 (S.D.N.Y.1999).

¶ 58 By requiring parties seeking to amend a pleading to follow the rules pertaining to other motions, rules 7(b)(1) and 4–501 promote the policies of (1) mitigating prejudice to opposing parties by allowing that party to respond to the motion for leave to amend, and (2) assuring that a court can be apprised of the basis of a motion and rule upon it with a proper understanding of the motion. *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.,* 181 F.3d 1180, 1186 (10th Cir.1999). Specifically, rule 7(b)(1) requires the grounds for a motion for leave to amend to be stated particularly and with an attached proposed amended pleading so that the court can ascertain what changes are sought and can determine whether the motion should be granted and whether justice so requires the amendment of a pleading. *See AT&T Corp.,* 184 F.R.D. at 521.

¶ 59 In this case, Holmes never filed an actual motion for leave to amend. Further, Holmes's request failed to "state with particularity the grounds" upon which it based its motion for leave to amend. Utah R. Civ. P. 7(b)(1). Holmes merely cited rule 15(a) and noted that leave to amend should be freely given. Holmes never articulated a single reason why the trial court should have granted it leave to amend and never provided the trial court a proposed amended complaint so that the court could determine the changes that Holmes intended to make. By relegating its motion to the end of the memoranda opposing the motions to dismiss, Holmes's motions did not comply with Utah's formal motion practice rules. *See Glenn v. First Nat'l Bank in Grand Junction,* 868 F.2d 368, 370 (10th Cir.1989); *Long,* 181 F.3d at 1279–80. Simply put, Holmes's abbreviated requests for leave to amend its complaint "lacking ... statement[s] of the grounds for amendment and dangling at the end of [its] memorand[a, do] not rise to the level of a motion for leave to amend." *Calderon,* 181 F.3d at 1187. Therefore, because Holmes's motions for leave to amend its complaint were insufficient, the trial court did not abuse its discretion in denying the motions.

**CONCLUSION**

¶ 60 In sum, the trial court correctly held that First American is not liable to Holmes under the title insurance policy and that Holmes failed to properly plead that First American assumed and breached any first-party contractual duties outside of the policy. Further, the trial court correctly concluded that Cook and Cook Development are not liable to Holmes for breach of the covenants of title for any damages beyond nominal damages, for which we will not remand. Moreover, the trial court did not err in concluding that Holmes does not have standing to sue Cook and Cook Development under the indemnity agreement and the modification and extension agreement. Finally, the trial court did not abuse its discretion in denying Holmes's motions for leave to amend the complaint. Therefore, in light of the foregoing, we affirm the orders granting summary judgment to First American, Cook, and Cook Development.

¶ 61 Chief Justice DURHAM, Associate Chief Justice DURRANT, and Justice WILKINS concur in Justice RUSSON'S opinion.

¶ 62 Justice HOWE concurs in the opinion with the exception of part IV, in which he concurs in the result.